**Randolph Eugene ARLEDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–84–079–CR.**

Court of Appeals of Texas, Waco.

Jan. 17, 1985.

**56**

· William L. Smith, Stewart & Smith, Corsicana, for appellant.

Patrick C. Batchelor, Criminal Dist. Atty., Jennifer Judin, Asst. Criminal Dist. Atty., Corsicana, for appellee.

## OPINION

JAMES, Justice.

In this case the Appellant after pleading not guilty was convicted by a jury of mur-

der, and his punishment was assessed by the jury at confinement in the Texas Department of Corrections for 99 years.

The indictment alleges that Appellant on or about the 29th day of August, 1981, did in Navarro County, Texas, intentionally and knowingly cause the death of Carol Armstrong by stabbing her with a knife.

Appellant asserts three grounds of error as follows:

(1) No instruction was given in the charge as to the law of circumstantial evidence;

(2) Appellant challenges the sufficiency of the evidence to support the conviction; and

(3) The trial court erred in admitting into evidence certain testimony of witness Jimmy Johnson (hereinafter more particularly set out) over Appellant's objections.

We overrule all of Appellant's grounds of error and affirm.

■ By Appellant's first ground of error, Appellant argues that since the case presented against Appellant was one of circumstantial evidence, that the trial court should have charged the jury on the law of circumstantial evidence. Appellant made no objections to the charge concerning the court's failure to charge on the law of circumstantial evidence, nor did Appellant request an instruction on the law of circumstantial evidence. Therefore, Appellant has not preserved this ground of error for review. Articles 36.14 and 36.15, Code of Criminal Procedure; *Martin v. State*, (Tex. Cr.App.1982) 630 S.W.2d 952.

Moreover, where (as here) the jury has been properly charged on the State's burden of proof, the presumption of innocence, and the requirement that an acquittal be entered if there exists a reasonable doubt as to Appellant's guilt, a charge on the law of circumstantial evidence has been held to be unnecessary. *Hankins v. State*, (Tex. Cr.App.1981) 646 S.W.2d 191.

■ By his second ground of error Appellant challenges the sufficiency of the

evidence to support the conviction. We overrule this point.

State's witnesses Vickie Jernigan and James Buchanan testified that on the evening of August 29, 1981, Appellant was at a party at the Jernigan residence until after dark, around nine or ten o'clock at night. State's witness James Gunter testified that he saw Appellant later that same evening at about eleven o'clock, driving one William Sadler's car, by himself, in the Gibson's parking lot in Corsicana, Texas. The Sadler car was a white Plymouth, an ex-sheriff's car, with a spotlight on the left side.

The deceased Carol Armstrong was last seen alive by Nelda Lanier, a clerk at a Seven-Eleven Store located on Second Avenue in Corsicana, Texas, about 10:30 P.M. on August 29, 1981. Carol Armstrong's body was found the next morning on a county road about 2.1 miles from the City of Corsicana. Her partially clothed body had forty-eight cuts and stab wounds in the areas of her neck, chest, hands and upper back. According to the autopsy, the manner of death was determined to be homicide.

James Buchanan testified that in the early morning hours of August 30, 1981, at about 2:30 A.M. to 3:00 A.M., Appellant returned to the Jernigan residence with blood on his shirt, a bite over an eye, and an open, bloody knife in his back pocket. Buchanan testified that Appellant "looked like he had been in a fight." Buchanan asked Appellant what was wrong, to which Appellant replied, "I don't know, man. I can't remember."

Shortly thereafter Appellant left for Houston where he met with Bennie Lomas on September 8, 1981. Appellant, Lomas, and a woman named Paula Lucas left Houston for Tennessee where they were subsequently arrested. On their way to Tennessee, Appellant told Lomas that he had stabbed a girl in Corsicana right before he came to Houston on September 8, 1981. Appellant showed Lomas a knife, and told him it was the one he used to stab the girl. When Appellant, Lomas, and Paula Lucas were arrested in Tennessee, this same knife was confiscated by Detective Cooper of the Cleveland, Tennessee, Police Department, and was kept by him, Cooper, until it was turned over to the Navarro County Sheriff's Department.

Dr. Nina Hollander, the pathologist who conducted the autopsy on the deceased, testified that the knife in question was consistent with being able to inflict the wounds that the deceased Carol Armstrong received.

The Appellant offered the defense of alibi. Appellant's two sisters and brother-in-law testified that he was at the Jernigan residence throughout the night of August 29 and into the morning hours of August 30, 1981. The jury was charged on the defense of alibi. By their verdict of guilty, the jury disregarded Appellant's defense of alibi.

We are of the opinion and hold that the evidence is sufficient to support the conviction. Appellant's second ground of error is overruled.

█ Appellant's third ground asserts the trial court erred by admitting into evidence the following testimony by Jimmy Johnson:

Q. Mr. Johnson, after August 1981, did you have a conversation with a sister of the defendant in this case?

A. Yes, I did.

Q. And what was the basis of that conversation?

A. Pat McKee came to work one morning very upset and crying and made a statement to me that her sister was high and was babysitting her children, and she would like to leave work and go be with her, and she also said in the process of conversation, mentioned her sister has said that Randy raped a dead girl and . . . .

To which Appellant's counsel objected on the ground there was no direct evidence on this and it was not in rebuttal, and moved for a mistrial. The State contended that this was to impeach the sister's testimony. The trial court overruled the objection.

The testimony in question is hearsay and was improperly admitted. In *Wilder v. State*, (Tex.Cr.App.1979) 583 S.W.2d 349, it was held that the duty of the appellate court is to determine whether there is a reasonable possibility that improperly admitted evidence contributed to the conviction based upon the court's own reading of the record and the probable impact on the minds of an average jury. It was further held in *Wilder* that improper admission of evidence does not constitute reversible error if the same facts are proven by other proper evidence. *Id.* at 363. Based upon the test laid down in *Wilder*, we are of the opinion and hold that the admission into evidence of the testimony in question did not contribute to the conviction, and therefore did not constitute reversible error.

Judgment of the trial court is affirmed.

AFFIRMED.